Tagged Opinion



**ORDERED in the Southern District of Florida on June 26, 2009.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

IN RE:                                          CASE NO: 08-27948-BKC-PGH

Robert Anton Abbott and
Stacy Edith Abbott,                             Chapter 7 Proceedings
    Debtors.
_____/

### MEMORANDUM ORDER OVERRULING TRUSTEE'S OBJECTION TO CLAIMED EXEMPTION PURSUANT TO FLA. STAT. § 222.25(4), BUT DEFERRING RULING ON DEBTORS' CLAIMED EXEMPTION FOR 2008 TAX REFUND PURSUANT TO FLA. STAT.§ 222.25(3)

**THIS MATTER** came before the Court for hearing on March 9, 2009, upon Michael R. Bakst's ("Trustee") *Objection to Claimed Exemption and Application for Turnover* ("Objection"), wherein the Trustee objects to Robert Anton Abbott and Stacy Edith Abbott's (collectively, the "Debtors") claim of exemption for personal property pursuant to Fla. Stat. § 222.25(4), and to their claim of exemption for an unknown amount of their 2008 Tax Refund pursuant to Fla. Stat. § 222.25(3).

## BACKGROUND

The facts of this matter are undisputed. The Debtors filed their voluntary joint petition under Chapter 7 of the Bankruptcy Code on November 25, 2008 ("Petition Date"). The Debtors schedules indicate that they own a home in Port St. Lucie, Florida (the "Real Property") where the Debtors resided on the Petition Date and where they continue to reside. Although the Debtors did not claim a homestead exemption for the Real Property, the Debtors' Statement of Intention indicates that the Debtors intend to reaffirm the debt secured by the Real Property. The Real Property was listed on the Debtors' Schedules with a value of $113,000.00 as of the Petition Date, against which there was a mortgage lien of $177,071.00. The Trustee does not dispute the Debtors' stated value of the Real Property or the amount of the mortgage thereon. Thus, the parties agree there was no equity in the Real Property on the Petition Date or currently. On March 25, 2009, the Trustee filed a Notice of Abandonment of the Real Property.

Having not claimed a homestead exemption for the Real Property, the Debtors claimed the following personal property as exempt pursuant to Fla. Stat. § 222.25(4): any funds over and above the sum of $234.08 in their checking account, household goods and furnishings in the amount of $2,000.00, wedding rings and other jewelry in the amount of $750.00, a 2000 Suzuki Intruder 1500 motorcycle in the amount of $3,500.00, and a 2006 Triple Crown 5 x

8 utility trailer in the amount of $500.00. The Debtors also claimed as exempt pursuant to Fla. Stat. § 222.25(3), their 2008 Tax Refund in an unknown amount. The Trustee objects to these claims of exemption and seeks turnover of the above-listed property.

## CONCLUSIONS OF LAW

### I.   Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### II.  Fla. Stat. § 222.25(4) – Statutory Personal Property Exemption

### A.   Section 222.25(4) contains two exclusions

Florida Statutes § 222.25(4), which became effective July 1, 2007, provides an additional $4,000.00 personal property exemption ("Statutory Personal Property Exemption"), for a debtor who neither claims the constitutional homestead exemption, or otherwise receives the benefits of the constitutional homestead exemption.[1] Thus, the statute has two exclusions: 1) debtors who claim a homestead exemption are excluded from claiming the Statutory

---

[1] Fla. Stat. § 222.25 (4) states:
The following property is exempt from attachment, garnishment, or other legal process:

(4) A debtor's interest in personal property, not to exceed $4,000, if the debtor does not claim or receive the benefits of a homestead exemption under s. 4, Art. X of the State Constitution. This exemption does not apply to a debt owed for child support or spousal support.

Personal Property Exemption, and 2) debtors who receive the benefits of a homestead exemption are excluded from claiming the Statutory Personal Property Exemption.

The Debtors in this case did not affirmatively claim a homestead exemption. Nevertheless, the Trustee argues that by continuing to occupy the Real Property and by not surrendering the Real Property, the Debtors are receiving the benefits of the homestead exemption.[2] Based upon this argument, the Trustee maintains that the Debtors are excluded from claiming the Statutory Personal Property Exemption provided by § 222.25(4). In order to determine this matter, the Court must construe the statute's second exclusion and what it means to "receive the benefits of a homestead exemption under § 4, Art. X of the State Constitution."

### B.    *"Receive the benefits" exclusion is in the present tense*

Courts have grappled with the meaning of the exclusionary phrase "receive the benefits of a homestead exemption" and the application of § 222.25(4) since its enactment.[3] Most courts agree and draw meaning from the fact that the statute is written in the present tense. *See e.g.*, *In re Gatto*, 380 B.R. 88, 91 (Bankr. M.D.

---

[2]In *Shoopman*, 2008 WL 817109, at *2 (Bankr. S.D. Fla. 2008), this Court recognized that a married debtor who did not claim a homestead exemption might still receive the benefits of a homestead exemption. This could occur where one spouse not claiming the homestead exemption filed for bankruptcy while the non-filing spouse retained constitutional homestead rights with respect to creditors. In the case at bar, such a scenario is not at issue because the married Debtors filed a joint petition.

[3]Thoughtful statutory analysis of § 222.25(4) has been presented in other opinions and need not be repeated. *See e.g. Morales*, 381 B.R. 917, 920 (Bankr. S.D. Fla. 2008); *Gatto*, 380 B.R. 88, 91-92 (Bankr. M.D. Fla. 2007).

Fla. 2007)("The word 'receive' is in the present tense. This is consistent with the general proposition that a debtor's entitlement to an exemption is determined as of the date of the petition."); *In re Morales*, 381 B.R. 917, 920 (Bankr. S.D. Fla. 2008)("A striking feature of the language of the statute is that it is written in the present tense. Therefore, the fact that a debtor may have claimed or received the benefits of a homestead exemption in the past would appear to have no bearing on the application of the statute to a debtor's present situation."); *In re Magelitz*, 386 B.R. 879, 881 (Bankr. N.D. Fla. 2008)("[I]n order to be excluded from the enhanced personal property exemption, the language of the statute requires that the debtor presently receive benefits that derive from the constitutional exemption of the home from the reach of creditors.")(*citing Gatto*, 380 B.R. at 91-93).

**C.   Broad versus narrow construction of the "receive the benefits" exclusion**

While it is generally agreed that a debtor is ineligible to claim the Statutory Personal Property Exemption if the debtor presently receives the benefits of the homestead exemption on the petition date, defining what those benefits include has caused a split among the courts. Some courts give broad meaning to "receive the benefits of a homestead exemption," and find that a debtor receives such benefits if, for example, the debtor is merely eligible to claim the homestead exemption, or the debtor occupies the home, or the debtor fails to timely state an intention to

5

surrender the home, or the debtor reaffirms the debt secured by the home, or the debtor fails to surrender the home. Under this broad construction of the "receive the benefits" exclusion, such debtors are found to be ineligible for the Statutory Personal Property Exemption. *See e.g. In re Franzese,*383 B.R. 197, 206 (Bankr. M.D. Fla. 2008)("[A] homeowner may not use the Statutory Personal Property Exemption if they either affirmatively 'claim' the constitutional homestead exemption or _could_ claim the benefit on the petition date.")(emphasis in original); *Morales*, 381 B.R. at 923 (the higher personal property exemption is available if the debtor does not claim the property as exempt and the debtor properly and timely files a statement of intention to surrender the property); *Magelitz*, 386 B.R. at 883 (a debtor receives the benefits of the constitutional homestead exemption if he "intends to retain the home, reside in it, and continue to make the monthly mortgage payments"); *In re Rogers*, 396 B.R. 100, 104-105 (Bankr. M.D. Fla. 2008)(debtors who declared intention to reaffirm debt, entered into reaffirmation agreement, resided in the home, and did not move away from the home are ineligible to claim enhanced exemption); *In re Oliver*, 395 B.R. 792, 793 (Bankr. S.D. Fla. 2008) ("Since the Debtor plans to reaffirm the debt on her homestead property, as a matter of law, the Debtor is receiving the benefits from her homestead property and is not entitled to the additional $4,000 personal property exemption provided for under Florida

6

Statute § 222.25(4)").

Other courts, including this one, have interpreted the "receive the benefits of a homestead exemption" exclusion more narrowly such that the _only_ presently received benefit that would render a debtor ineligible for the Statutory Personal Property Exemption is the constitutional benefit of protecting a homestead property from forced sale by creditors. _See e.g. Gatto_, 380 B.R. at 93 ("[I]t is only where a debtor does not claim the benefit of shielding the homestead from creditors, as opposed to other non-creditor related homestead benefits, that the debtor may enjoy the Statutory Personal Property Exemption."); _In re Shoopman_, 2008 WL 817109, at *2 (Bankr. S.D. Fla. Mar. 25, 2008)(determining that benefits incidental to home ownership are distinct from the receipt of benefits of Florida's constitutional homestead exemption)(_citing Gatto_, 380 B.R. at 93); _In re Hernandez_, 2008 WL 1711528, at *3 (Bankr. S.D. Fla. April 10, 2008)("In this Court's view, the 'receive the benefits of' exclusion must be interpreted in the context of protection from efforts to execute against the home."); _In re Bennett_, 395 B.R. 781, 788 (Bankr. M.D. Fla. 2008)("[T]he Homestead Exemption found in Article X of the Florida Constitution only provides one benefit - it shields the home from forced judgment sale.")(_citing Hernandez_, 2008 WL 1711528, at *4).

The Court disagrees with the cases broadly interpreting the "receive the benefits" exclusion and finds that the narrow

7

interpretation of the exclusion, as presented in *Bennett* and *Hernandez* is more "closely aligned with the language and intent of the provision." *Menotte v. Maritas (In re Maritas)*, Case No. 08-80563-Civ-Gold (S.D. Fla. Nov. 20, 2008) *aff'g In re Martias*, 2008 WL 906776 (Bankr. S.D. Fla. Apr. 3, 2008).

This Court previously determined that factors incidental to ownership of a home were not synonymous with receiving the benefits of a homestead exemption. *Shoopman*, 2008 WL 817109, at *2. The benefits contemplated under the statute are those derived from the constitutional homestead exemption, i.e., protecting the home from forced sale by creditors. Thus, in *Shoopman,* the Court determined that the benefit a debtor receives by virtue of occupying real property on the petition date was distinct from receiving the benefits of Florida's constitutional homestead exemption, and that a debtor's stated intention to reaffirm debt or surrender property was also not indicative of whether a debtor was receiving the benefits of Florida's homestead exemption. *Id*. at *2-3; *see also Hernandez*, 2008 WL 1711528, at *4 (similarly reasoning that tax benefits with respect to homestead property are not provided by Art. X, §4 of the Florida Constitution and therefore they are not benefits within the meaning of the Statutory Personal Property Exemption). In *Shoopman*, the Court also rejected the trustee's argument that a debtor continues to receive the benefits of a homestead exemption until the home is abandoned to a secured

creditor or until the trustee removes the debtor from the home and administers the property, because trustee's argument confused administration of an asset of the estate with receiving the benefits derived from the constitutional homestead exemption. 2008 WL 817109, at *3.

Determination of whether a debtor receives the benefits of a constitutional homestead exemption turns on the facts of each case. *Id.* at *2. Unlike Mr. Shoopman, who indicated his intention to surrender the property by agreeing to relief from stay early in the case, the Debtors in this case intend to reaffirm the debt securing the Real Property and they intend to continue to reside in the Real Property.  In cases factually similar to the case at bar, courts have utilized a broad construction of the "receive the benefits" exclusion to determine that debtors were excluded from claiming the Statutory Personal Property Exemption. *See Magelitz*, 386 B.R. 879; *Rogers*, 396 B.R. 100; *Oliver*, 395 B.R. 792; *but cf. Bennett*, 395 B.R. 781. Although this Court respectfully disagrees with its conclusion, Judge Killian's opinion in *Magelitz*, presents one of the more cogent analyses for construing the exclusion broadly.[4]

*Magelitz* rests upon two aspects of Florida homestead law: 1) the self-executing nature of Florida's homestead exemption such

---

[4]The Court notes that in *Magelitz*, Judge Killian framed the issue as: "[W]hether by retaining the home and continuing to live in it, the debtor is receiving the benefits of the constitutional homestead exemption." *Id* at 880. As discussed herein, this Court does not find that occupying the home is synonymous with receiving the benefits of the homestead exemption.

9

that homestead status is impressed on certain property when the
constitutional requirements are met; and 2) that once acquired,
homestead status is retained until the property is abandoned or
properly alienated. 386 B.R. at 883 (citations omitted). The
*Magelitz* court reasoned that neither a debtor's failure to claim a
home as exempt, nor a trustee's decision to abandon a home lacking
in equity, alters the property's homestead status under Florida
law. *Id.* Judge Killian found that if a debtor continues to remain
in possession of property that has the status of homestead under
Florida law, its status is unaltered and the debtor receives the
benefits of the homestead exemption. *Id.* There are two reasonable
conclusions regarding the Statutory Personal Property Exemption
that can be drawn from this reasoning: 1) based upon its self-
executing nature, mere eligibility for homestead will preclude a
debtor from claiming the Statutory Personal Property Exemption; and
2) surrender of the property is a prerequisite to claiming the
Statutory Personal Property Exemption. Judge Mark rejected the
first conclusion in *Hernandez*, 2008 WL 1711528, and Judge
Williamson rejected the second conclusion in *Bennett*, 395 B.R. 781.

1.   *Hernandez- Eligibility* to *Claim Homestead is Insufficient*

Although *Hernandez* is not on point with this case factually,[5]

---

[5] The Hernandez court sustained the trustee's objection to debtor's
claim of exemption pursuant to Fla. Stat. § 222.25(4) because the debtor's
non-filing spouse retained her right to assert the homestead exemption for the
residence they jointly owned as tenants by the entireties.

the Court adopts the reasoning set forth by Judge Mark in determining that eligibility for the homestead exemption does not equate to receiving the benefits of the homestead exemption in the context of protection from efforts to execute against the home. As Judge Mark stated in *Hernandez*:

> If the legislature meant to exclude from the Statutory Personal Property Exemption all homeowners who owned homes on the petition date which met the constitutional definition of a homestead, the statute could have plainly and easily been written to exclude all individuals owning homes <u>eligible</u> for the constitutional exemption. That, of course, is not what the statute says. Rather, it excludes only those who <u>receive the benefits</u> of the constitutional exemption.

2008 WL 1711528, at *3 (emphasis in original). Thus, the *Hernandez* court "rejected the argument that a debtor eligible to receive the benefits of the Homestead Exemption is ineligible to claim the Statutory Exemption, because the statute only excludes those who 'receive the benefits of,' not all those who are eligible." *Bennett*, 395 B.R. at 786. The *Bennett* court concurred, noting that "[t]here would be no reason for the legislature to have allowed the exemption for a debtor who 'does not claim or receive the benefits of' if it truly meant merely that a debtor 'could claim' or 'is eligible to claim' the Homestead Exemption." *Id.* at 788. This Court agrees.

2.   *Bennett- Surrender is Not Required*

While recognizing that under Florida law homestead status can only be lost through abandonment or alienation, the *Bennett* court

11

nonetheless rejected the conclusion that a debtor receives the

benefit of the homestead exemption in the context of bankruptcy

until he surrenders, or indicates his intention to surrender, the

property.

> If all who could claim the exemption were to
> automatically receive the benefits of the Homestead
> Exemption in the context of a bankruptcy, then the
> decisions in *Magelitz*, *Franzese* and *Morales* would be
> persuasive in holding that mere eligibility is
> sufficient and the language of the Statutory Exemption
> provision would be largely unnecessary. However, it is
> clear to this Court that *a debtor in bankruptcy may*
> *cease to receive the benefits of the Homestead*
> *Exemption regardless of whether that protection could*
> *cease under the operation of Florida law alone*.

*Id.* at 789 (emphasis added).

Thus, bankruptcy adds another dimension to the analysis. While

all of a debtor's property  becomes property of the estate pursuant

to § 541 of the Bankruptcy Code, an individual debtor may exempt

from property of the estate items or amounts specified under the

federal or state scheme of exemptions pursuant to § 522(b)(1). *Id.*

Judge Williamson found it significant, and this Court agrees, that

the "term 'may' indicates that the debtor is not required to claim

exemptions." *Id.* "If the debtor does not choose to exempt the

homestead under the Florida Homestead Exemption, the real property

remains property of the estate . . . and is subject to

administration by the trustee." *Id*. at 789-790. By not claiming the

homestead exemption in bankruptcy, the debtor ceases to receive the

benefit of protecting the home from the claims of creditors and

takes the chance that the trustee may administer the property. *Id.*
at 790-91. The *Bennett* court did not find it necessary for the
debtor to surrender the property. *Id.* at 791. It was sufficient
that the homestead would not be protected if the trustee decided to
administer it. *Id.* at 790. This Court agrees with Judge
Williamson's conclusion that in the bankruptcy context, debtors who
do not claim the homestead exemption and instead leave the property
available for administration by the trustee do not receive the
benefits of the homestead exemption. *Id.* at 790.

3.   *Future Acquisition of Equity is Irrelevant*

As a practical matter, it is unlikely that a trustee will
administer real property that is "underwater", because there is no
equity to be realized from such administration. The debtor in
bankruptcy faces the same problem as the trustee. In reality, such
debtor receives no benefit on the petition date by shielding the
property from execution by creditors under the constitutional
homestead exemption because there is no equity to shield. Some
courts have determined that in these circumstances the Debtor still
receives the benefit of the homestead exemption because "even when
the property has no equity value, ... future value realized in the
property is protected from all creditors except for those creditors
with security interests in the property." *Oliver*, 395 B.R. at 794;
*see also Magelitz*, 386 B.R. at 884 (post-petition creditors would
not be able to pursue the homestead); *Rogers*, 396 B.R. at 105

("Because of the property's homestead status under the Florida Constitution, . . . it is protected from forced sale by the debtor's post-petition creditors."). However, as previously discussed, courts agree that the statute is written in the present tense. Therefore, whether a debtor acquires equity in the property in the future is irrelevant to the issue of whether the debtor receives the benefits of the homestead exemption as of the petition date. As the *Hernandez* court stated in rejecting the same argument:

> . . .the time to determine whether the debtor "receives a benefit" is the petition date. In allowing or disallowing a debtor's attempt to claim the Statutory Personal Property Exemption in a bankruptcy case, the focus is solely on the exemptions which will affect creditors in the case. The fact that the debtor is keeping his home and may use the constitutional shield to protect against execution by future creditors is not relevant.

*Hernandez*, 2008 WL 1711528, at *5.

In the bankruptcy context future creditors and future acquisition of equity in the home are of no consequence to the determination of whether a debtor receives the benefits of the constitutional homestead exemption as of the petition date. This analysis is consistent with the plain language of the statute, and the goal of a fresh start for debtors.

**D. The Statute's Intent**

While it is unnecessary for courts to divine legislative intent when a statute, like § 222.25(4), is plain and unambiguous on its face, some courts broadly interpreting the statute's

"receive the benefits" exclusion maintain that their interpretation is in keeping with the statute's legislative intent. *See e.g. Morales*, 381 B.R. at 921 ("The purpose of these extra exemptions is to give a person who lacks a homestead a minimal amount of property from which to restart their lives. This legislative history supports the Court's reading of the statute, that absent proper abandonment of the homestead the Debtor is ineligible for the new and expanded personal property exemption.) The *Franzese* court extensively discussed the statute's legislative history and concluded that the Statutory Personal Property Exemption was only available to a debtor who did not own a homestead. *See Franzese*,383 B.R. 197, 207-208 (Bankr. M.D. Fla. 2008)(extensively discussing the *Proposed Amendment to Personal Property Exemption Statute Fla. Stat. Section 222.25* ("PPE Proposal") (August 7, 2006), a research proposal drafted by the Business Law Section of the Florida Bar and relied upon by the Florida legislature in enacting § 222.25(4)).

The PPE Proposal noted that while the constitutional homestead exemption protects virtually unlimited value in a debtor's homestead because it automatically increases with inflation, the constitutional personal property exemption of $1,000.00 has remained unchanged since it's enactment in 1878. *Id.* at 207. The PPE Proposal further noted that the personal property exemption would have exempted most, if not all, of an 1878 debtor's property and that $1,000.00 in 1878 dollars amounts to over $20,000.00

15

today. *Id.* at 207-208. The PPE Proposal argued that the additional Statutory Personal Property Exemption was needed because the $1,000.00 exemption failed to provide destitute debtors with sufficient property to provide for themselves. *Id.* at 208.

The Court notes the well-settled proposition that exemptions in bankruptcy are to be liberally construed in order to afford the honest debtor a fresh start. *In re Hafner*, 383 B.R. 350, 353 (Bankr. N.D. Fla. 2008)(ruling upon the propriety of stacking exemptions, "when interpreting Florida exemption statutes, the court should 'begin with the basic proposition that exemptions are to be construed liberally in favor of providing the benefits of the exemptions to debtors,' because such liberal interpretation would 'best accord with the public benefit.'")(citations omitted); *In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985)("where an exemption statute might be interpreted either favorably or unfavorably vis-á-vis a debtor, we should interpret the statute in a manner that favors the debtor"). Narrow construction of the exclusion fosters liberal construction of the Statutory Personal Property Exemption. In addition, the Court finds that narrow interpretation of the statute's "receive the benefits" exclusion more fully realizes the intent and plain language of the statute by allowing the enhanced exemption to debtors who neither claim the homestead exemption on their bankruptcy schedules or receive the benefit of protecting the homestead from forced sale by creditors.

16

It was recently reported that in the fourth quarter of 2008, 1.3 million Florida mortgage holders owed more than their homes were worth, making Florida second to California as the states with the highest number of underwater borrowers in the nation.[6] Many of these troubled homeowners bought near the peak of the housing boom, at about the same time that the PPE Proposal was drafted. Debtors who owe more on their homes than the home is worth, do not receive any benefit from the homestead exemption in the bankruptcy context because there simply is no equity to protect from creditors. If such debtors are denied the Statutory Personal Property Exemption they will exit bankruptcy with insufficient property to provide for themselves and their families. Moreover, the Court notes that post-BAPCPA, the Chapter 7 debtors affected by the exemption are mostly below median income debtors. The statute does not state that the Statutory Personal Property Exemption is unavailable to a debtor who owns a homestead as some courts have held. Rather it states that it is unavailable to a debtor who receives the benefits of a homestead exemption.

Thus, the Court concludes that the Debtors, who did not claim

---

[6]*Florida Second in U.S. in "Underwater" Borrowers, Report Says*, SOUTH FLORIDA SUN-SENTINEL, March 4, 2009 (Online Edition-Business), 2009 WLNR 433013 (referencing a fourth quarter report issued by First American CoreLogic):

> In the fourth quarter, roughly 8.3 million mortgage holders nationwide owed more on their loans than their properties are worth. . . .In Palm Beach County, 101,133, or about 30 percent, of all properties with a mortgage were "under water." Broward had 144,551 properties, or about 35 percent, with negative equity. . . .Florida had 1.2 million borrowers with negative equity in the third quarter, according to the Santa Ana, Calif.-based company.

the homestead exemption in their bankruptcy schedules, who owed more on their home than it was worth on the Petition Date, and who were not shielding their home from the reach of creditors by some other device, did not receive the benefits of the homestead exemption as of the Petition Date even though they continue to reside in the Real Property and they intend to reaffirm the debt secured by the Real Property. Therefore, the Debtors are eligible to claim the Statutory Personal Property Exemption. The Trustee's Objection to the Debtors' claim of exemption based upon § 222.25(4) is overruled. The fact that the Trustee recently filed a Notice of Abandonment of the Real Property is irrelevant to the Court's determination. The Trustee could have legally administered the Real Property if he chose to do so.

### III. 2008 Tax Refund

The Trustee also objects to the Debtors' claim of exemption for an unknown amount of their 2008 Tax Refund. The Debtors' claimed an exemption on their Schedules for their 2008 Tax Refund pursuant to Fla. Stat. § 222.25(3) which provides a special exemption for a debtor's interest in a tax refund or credit traceable to the federal earned income credit for low income individuals.[7] The Trustee argues that the Debtors claimed a "zero"

---

[7]Fla. Stat. § 222.25(3) provides:
The following property is exempt from attachment, garnishment, or other legal process:

(3) A debtor's interest in a refund or a credit received or to be received, or the traceable deposits in a financial institution of

exemption, and consequently they have not legally claimed any exemption for the property. However, the Trustee's citation to *In re Zupansic*, 259 B.R. 388 (Bankr. M.D. Fla. 2001), is not on point with Trustee's argument. Debtors have responded that they may be entitled to a § 222.25(3) exemption in their 2008 Tax Refund but that they cannot determine the extent of the exemption until the return is filed.  The Debtors also argue that the 2008 Tax Refund is exempt to the extent that the refund includes post-petition funds paid to the Internal Revenue Service, and to the extent that they have unused Statutory Personal Property Exemptions. Based upon the record, the Court is unable to make a determination as to the status of the 2008 Tax Refund. If the parties are unable to resolve the issue of the Debtors' 2008 Tax Refund, they should contact the Courtroom Deputy to schedule an evidentiary hearing.

**CONCLUSION**

As discussed above, the Court finds that the Debtors did not receive the benefit of Florida's constitutional homestead exemption as of the Petition Date. Therefore, the Debtors are eligible to claim exemptions pursuant to Fla. Stat. § 222.25(4). The Court will defer ruling on the propriety of Debtors' claimed exemption in their 2008 Tax Refund.

---

a debtor's interest in a refund or credit, pursuant to s. 32 of the Internal Revenue Code of 1986, as amended. This exemption does not apply to a debt owed for child support or spousal support.

## <u>ORDER</u>

The Court, having heard the argument of counsel, reviewed the applicable law, the submission of the parties, and being otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1.   Trustee's Objection to Debtors' claim of exemption pursuant to Fla. Stat. § 222.25(4) is **overruled.**

2.   The Court will defer ruling on Trustee's Objection to Debtors' claim of exemption for an unknown amount in their 2008 Tax Refund. The parties should contact the Courtroom Deputy to schedule an evidentiary hearing if they are unable to resolve the issue.

# # #

Copies Furnished to:
Michael Bakst, Esq.
Joseph Rodowicz, Jr. Esq.
AUST